**TENNESSEE GAS PIPELINE COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**EAST TENNESSEE NATURAL GAS COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**Nos. 75–2184 and 75–2185.**

United States Court of Appeals, District of Columbia Circuit.

Argued 12 Jan. 1977.

Decided 7 July 1977.

**956**

Terence J. Collins, Washington, D.C., with whom Dale A. Wright, Harold L. Talisman, Melvin Richter, and Gregory Grady, Washington, D.C., were on the brief, for petitioners.

Joseph G. Stiles, Atty., Federal Power Commission, Washington, D.C., for respondent. Drexel D. Journey, Gen. Counsel, Federal Power Commission, Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol., and Steven A. Taube, Atty., Federal Power Commission, Washington, D.C., were on the brief, for respondent.

Before BAZELON, Chief Judge, and McGOWAN and WILKEY, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge.

## I. FACTS

Petitioners, both natural gas companies subject to regulation by the Federal Power Commission under the Natural Gas Act,[1] filed with the Commission on 30 June 1975, proposed increases in their jurisdictional rates to become effective 15 August 1975.[2] Both included in their underlying rate bases construction work in progress (CWIP), representing costs of new plants and facilities which had not been completed and put in service. In so filing, a waiver was requested, if necessary, of Section 154.63(f) of the Commission regulations.[3]

Also, the petitioners included construction overhead as a current expense in the

underlying rate bases, rather than as a capital expenditure, the latter being required by the Federal Power Commission's Uniform System of Accounts. The construction overhead costs were described as those incurred by the petitioners' management and supervisory personnel in connection with the planning and construction of new facilities. When capitalized, construction overhead cost become part of the rate bases at the time the facilities are placed in service, and the utility receives returns thereon until fully recouped through depreciation.

The inclusion of CWIP in the rate bases and construction overhead as expenses was done because of the need for greater amounts of capital in the face of the intensifying natural gas shortage and the tightening of credit. The petitioners were investing in the development of new sources of natural gas and were making advance payments to producers. The petitioners claimed that this method would improve their cash flow and would result in long-term savings to consumers.

The Federal Power Commission required the petitioners, by orders of 14 and 15 August 1975, here under review, to revise and refile by 15 January 1976 the tariff sheets of their 30 June 1975 rate-increase filings to eliminate costs associated with facilities which were not certificated and placed in service by the date of filing, and also to eliminate construction overhead costs as an expense.

At the time the petitioners filed their rate tariffs, there was pending before the Federal Power Commission a rule-making proceeding inquiring into the inclusion of CWIP into the rate base, and the proceeding had not terminated at the time the orders under review were entered.[4] Subsequently on 8 Nov. 1976, the rulemaking

1. 15 U.S.C. § 717 et seq.

2. Tennessee Gas Pipeline Company, Docket RP 75-113; East Tennessee Natural Gas Company, Docket RP 75-114.

3. 18 C.F.R. 154.63(f).

4. Docket RM 75-13, Notice of Proposed Rulemaking, 15 Nov. 1974.

resulted in Order No. 555, —— F.P.C. ——, adopting CWIP in the rate base of electric utilities but limited to pollution control and fuel conversion facilities, and holding, "We are excluding natural gas companies from the scope of this rulemaking".[5] At oral argument, the petitioners' counsel withdrew the issue of CWIP from our consideration.

## II. ISSUE

The sole issue presented is whether the Federal Power Commission exceeded its authority in eliminating from rate tariffs construction overhead costs as a current expense.

## III. CONSTRUCTION OVERHEAD

In its initial orders,[6] the Federal Power Commission explained its elimination of construction overhead as an expense followed the requirement of the Uniform System of Accounts which provides for the capitalization of construction overhead costs and placing them in Account 107.[7] In the orders denying rehearing,[8] the Commission stated,

" .  .  . we believe that this matter must be treated *in pari materia* with CWIP, which is excluded since it is not used and useful in the public interest. The overhead expenses associated with this construction are similarly not incurred for the benefit of present consumers who will be required to pay the just and reasonable rates determined in this proceeding. Accordingly, these overheads should be capitalized and placed in rate base together with the CWIP project with which they are associated when that project is dedicated to the service of the consumers, not treated as a current expense. The policy underlying our treat-

ment of this item is identical to our policy with regard to CWIP."

The petitioners attack the orders under review by contending that the Commission improperly applied its accounting rules to ratemaking, the accounting rules do not require capitalization of construction overhead, the policy of excluding CWIP from the rate base does not include construction overhead being capitalized rather than treated as an item of current expense, and a hearing was required.

Petitioners persist in failing to recognize that even though an accounting rule does not govern ratemaking, the underlying policy upon which the rule rests does have direct bearing. The Commission has a long-established ratemaking policy of charging construction costs only to those consumers who benefit from the new service. This policy rests upon the "used and useful" test and the allowance of a fair rate of return, a standard which was set in the 1898 landmark decision of *Smyth v. Ames*,[9] holding that in ratemaking a company is entitled to ask a fair return "upon the value of that which it employs for the public convenience". Applying the "used and useful" test, Federal Power Commission Regulation Section 154.63(e)(2)(ii), in pertinent part, reads,

"(ii) Adjustments to experience .  .  . may include the amounts for facilities for which a permanent or temporary certificate has been granted, provided such facilities will be in service within the test period, *but such adjustments or estimates shall not include any amount for facilities in respect to which a certificate of public convenience and necessity must be obtained but has not been issued at the date of filing.* .  .  ." (Emphasis added)

---

**5.** Slip Opinion p. 8.

**6.** Docket RP 75–113 dated 15 Aug. 1975; Docket RP 75–114 dated 14 Aug. 1975.

**7.** Gas Plant Instructions 3 and 4, Uniform System of Accounts, 18 C.F.R. § 201 *et seq.*

**8.** Issued 10 Oct. 1975.

**9.** 169 U.S. 466, 547, 18 S.Ct. 418, 434, 42 L.Ed. 819 (1898).

Sec. 154.63(f) describes the statements to be filed with a proposed tariff change, and under Statement C, Cost of Plant, there is the following provision:

"Account 107 shall be adjusted to exclude plant in process of construction which is not expected to be in service by the end of the test period."

█ Both historical practice and Commission regulations firmly establish the propriety of excluding CWIP from the underlying rate base. The petitioners apparently concede this. Inextricably intertwined with CWIP are the overhead costs incurred by the petitioners; without the one, there is no need for the other. To utilize the language of the Commission's order of 10 October 1975, construction overhead costs are *in pari materia* with CWIP. The Commission relied upon a substantive policy, rather than accounting rules, in excluding construction overhead costs as current expenses, because these costs are not incurred for the benefit of *present* consumers.

█ The petitioners have raised the requirement of a hearing on the construction overhead issue. When there is no dispute on a factual issue, the application of an administrative policy does not require a hearing, *Municipal Light Boards of Reading and Wakefield, Massachusetts v. Federal Power Commission.*[10]

Accordingly, we affirm the orders under review.

---

10. 146 U.S.App.D.C. 294, 450 F.2d 1341 (1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972).